AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

### for the

### Eastern District of Virginia

FILED

OCT 2 0 2017

CLERK, US DISTRICT COURT
NEWPORT NEWS, VA

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>https://www.facebook.com/profile.php?id=100004552565128; https://<br>www.facebook.com/Sha.Gutta; and https://www.facebook.com/<br>profile.php?id=100010331737399; stored at premises controlled by<br>Facebook, Inc. | )<br>)<br>)<br>)<br>)<br>)    Case No. 4:17-sw-56 |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the     **Northern**     District of     **California**     , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1) | Possession of a Stolen Firearm |
| 18 U.S.C. § 922(u) | Theft from a Federal Firearms Licensee |
| 18 U.S.C. § 924(c) | Possession of Firearm During a Drug Trafficking Crime |

The application is based on these facts:

See affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

REVIEWED AND APPROVED:

*Megan M. Cowles*

Megan M. Cowles
Assistant United States Attorney

_____
*Applicant's signature*

Daniel Beasley ATF Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: **10/20/2017**

_____
*Judge's signature*

City and state: **Newport News, VA**

Lawrence R. Leonard, US Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| IN RE SEARCH OF | **UNDER SEAL** |
| INFORMATION ASSOCIATED<br>WITH FACEBOOK, INC. ACCOUNTS | Case No.  4:17mj ___ |

1) https://www.facebook.com/profile.php?id=100004552565128
2) https://www.facebook.com/Sha.Gutta
3) https://www.facebook.com/profile.php?id=100010331737399

THAT IS STORED AT PREMISES
CONTROLLED BY FACEBOOK, INC.

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

Your Affiant, Special Agent Daniel Beasley, does swear and affirm the following to be

true:

### I. INTRODUCTION AND AGENT BACKGROUND

1.      I, Daniel S. Beasley, am a Special Agent with the Bureau of Alcohol, Tobacco,

Firearms and Explosives ("ATF") and have been so employed since January 2016. I am an

investigator or law enforcement officer of the United States within the meaning of Federal Rule

of Criminal Procedure 41(a)(2)(C), that is a federal agent empowered to conduct investigations

and engaged in enforcing the federal criminal statutes.

2.      As part of my employment as an ATF Special Agent, I have successfully

completed the Criminal Investigator Training Program at the Federal Law Enforcement Training

Center and the ATF National Academy Special Agent Basic Training Program in Glynco,

Georgia.  As graduate of the Federal Law Enforcement Training Center Criminal Investigator

Training Program, I received specialized narcotics training. As a graduate of the ATF National

1



Academy, I received specialized training in federal firearms regulations. Prior to this appointment, I served as a United States Probation Officer and United States Probation Officer Assistant for the Middle District of Florida for seven years.

## II. PROPERTY TO BE SEARCHED

3.     This Affidavit is submitted in support of a request that the Court issue a search warrant for information associated with the Facebook, Inc. accounts:

      a.     "Xavier Greenauer-Mattox AKA X or Justice" with unique web address https://www.facebook.com/profile.php?id=100004552565128

      b.     "Alissha Faulks AKA Sha," with unique web address https://www.facebook.com/Sha.Gutta

      c.     "Phillip Evans AKA Phil" with unique web address https://www.facebook.com/profile.php?id=100010331737399

(collectively, the "Facebook accounts"), that are stored at a premises owned, maintained, controlled, or operated by Facebook Inc., a social networking company whose custodian of records is located in Menlo Park, California.  The information to be searched and seized is described in the following paragraphs and in Attachment A, attached hereto and incorporated herein.  This affidavit is made in support of an application for a search warrant under Title 18, United States Code, Sections 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), to require Facebook to disclose to the government records and other information in its possession, more thoroughly described in Attachment B, attached hereto and incorporated herein, pertaining to the subscribers or customers associated with the Facebook accounts, including the contents of communications. (described in Attachment A).



4.      This affidavit is based upon information that I have gained from my investigation, my training and experience, and conversations with other law enforcement officers. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation.  I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence, fruits, and instrumentalities (described in Attachment A) of violations of Title 18 U.S.C. § 371, Title 18 U.S.C. § 922(j), Title 18 U.S.C. § 922(u), Title 18 U.S.C. § 924(c), and Title 21 U.S.C. § 841(a)(1)(C), are within the information associated with the account mentioned above.

### III. LEGAL AUTHORITY

#### A.      Pertinent Criminal Statutes

5.      Title 18, United States Code, Section 371, which states "If two or more persons conspire to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose and one or more of such persons do any act to effect the object of the conspiracy."

6.      Title 18, United States Code, Section 922(j), which states "it shall be unlawful for any person to receive, possess, concealment, store, barter, sell or dispose of any stolen firearm which has been shipped or transported in, interstate or foreign commerce, and had reasonable cause to believe that the firearm was stolen."

7.      Title 18, United States Code, Section 922(u), which states "it shall be unlawful for a person to steal or unlawfully take or carry away from the person or the premises of a person who is licensed to engage in the business of importing, manufacturing, or dealing in firearms, any firearm in the licensee's business inventory that has been shipped or transported in interstate or foreign commerce.

LRL
Psŋ

8.      Title 18, United States Code, Section 924(c), which provides for specific penalties for anyone who "during and in relation to any crime of violence or drug trafficking crime… for which the person may be prosecuted in a court of the United States" uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm."

9.      Title 21, United States Code, Section 841(a)(1), which states "it shall be unlawful for any person knowingly or intentionally to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance."

### B.      Other Legal Authority

10.     The legal authority for this search warrant application regarding the Facebook, Inc. account is derived from 18 U.S.C. §§ 2701-2711, entitled "Stored Wire and Electronic Communications and Transactional Records Access." Section 2703(a) provides in relevant part as follows:

> A governmental entity may require the disclosure by a provider of electronic communication service of the contents of an electronic communication that is in electronic storage in an electronic communications system for one hundred and eighty days or less, only pursuant to a warrant issued under the Federal Rules of Criminal Procedure or equivalent State warrant. A governmental entity may require the disclosure by a provider of electronic communications services of the contents of an electronic communication that has been in electronic storage in an electronic communications system for more than one hundred and eighty days by the means available under subsection (b) of this section.

11.     18 U.S.C. § 2703(b) provides in relevant part as follows:

> (1) A governmental entity may require a provider of remote computing service to disclose the contents of any wire or electronic communication to which this paragraph is made applicable by paragraph (2) of this subsection –
>
> (A) without required notice to the subscriber or customer, if the governmental entity obtains a warrant issued under the Federal Rules of Criminal Procedure or equivalent State warrant.

4

(2) Paragraph (1) is applicable with respect to any electronic communication that is held or maintained on that service –

(A) on behalf of, and received by means of electronic transmission from (or created by means of computer processing of communications received by means of electronic transmission from), a subscriber or customer of such remote computing service; and

(B) solely for the purpose of providing storage or computer processing services to such subscriber or customer, if the provider is not authorized to access the contents of any such communications for purposes of providing any services other than storage or computer processing.

12.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711(3), 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i). Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. Facebook, Inc. accepts out-of-state and out-of-district service of subpoenas, court orders, and search warrants by fax without the presence of a law enforcement officer. Accordingly, your affiant will execute the requested search warrant by facsimile to the custodian of records at Facebook, Inc. and permission is requested for the data to be copied/obtained outside of the presence of a law enforcement officer. It is anticipated that Facebook, Inc. will produce the requested records in electronic format accompanied by a signed authentication letter via E-mail or on electronic media via U.S. Mail to your affiant.

13.     This investigation involves offenses within the jurisdiction and proper venue of the United States District Court for the Eastern District of Virginia, as more fully articulated below.

## IV. DEFINITIONS

14.     The term "computer," as used herein, is defined pursuant to 18 U.S.C. § 1030(e)(1), as "an electronic, magnetic, optical, electrochemical, or other high speed data

processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device."

15.     The terms "records," "documents," and "materials" include all information recorded in any form, including the originals and all non-identical copies thereof, whether different from the original by reason of any notation made on such copies or otherwise, including, but not limited to the following:

a.     documents, spreadsheets, records or representations;

b.     photographs;

c.     pictures;

d.     images, and

e.     aural records or representations.

16.     The terms "records," "documents," and "materials" include all of the foregoing, in whatever form and by whatever means, the records, documents, or materials, and their drafts, or their modifications may have been created or stored, including (but not limited to): any electrical, electronic, or magnetic form (including but not limited to any information on an electronic or magnetic storage device such as hard disks).

17.     The term "Universal Resource Locator" (URL): A URL is the unique address for a file that is accessible on the Internet. For example, a common way to get to a website is to enter the URL of the website's home page file in the Web browser's address line. Additionally, any file within that website can be specified with a URL. The URL contains the name of the protocol to be used to access the file resource, a domain name that identifies the specific computer on the Internet, and a pathname, a hierarchical description that specifies the location of a file in that computer.

6

18.     The term "Internet Protocol Address" (IP Address): Every computer or device on the Internet is referenced by a unique Internet Protocol address the same way every telephone has a unique telephone number. An example of an IP address is 192.168.10.102. Each time an individual accesses the Internet, the computer from which that individual initiates access is assigned an IP address. There are two types of IP addresses; static and dynamic. A static address is permanent and never changes, such as ones used in cable modems. The dynamic address changes almost every time the computer connects to the Internet.

19.     The term "Internet Service Providers" (ISPs): Individuals who have an Internet account and an Internet-based electronic mail (e-mail) address must have a subscription, membership, or affiliation with an organization or commercial service which provides access to the Internet. A provider of Internet access and services is referred to as an Internet Service Provider or "ISP".

20.     A "MAC Address" refers to the fact that every computer has a unique identifying number that is placed there by the manufacturer. It is based upon a set standard that all manufactures have agreed upon, and no two MAC addresses are alike. A MAC Address is similar to the VIN number of a vehicle, as the number is not changeable.

21.     "Web hosts" provide the equipment and services required to host and maintain files for one or more websites and to provide rapid Internet connections to those websites. Most hosting is "shared," which means that multiple websites of unrelated companies are on the same server in order to reduce associated costs. When a client develops a Website, the client needs a server and perhaps a web hosting company to host it. "Dedicated hosting," means that the web hosting company provides all of the equipment and assumes all of the responsibility for technical support and maintenance of a website. "Co-location" means a server is located at a dedicated hosting facility designed with special resources, such as a secure cage, regulated power, a

7

dedicated Internet connection, online security and online technical support.  Co-location facilities offer customers a secure place to physically house the customers' hardware and equipment as opposed to keeping it in their offices or warehouse, where the potential for fire, theft or vandalism is greater.

22.    "Electronic Communication Service" refers to any service which provides to users thereof the ability to send or receive wire or electronic communications. 18 U.S.C. § 2510(15).

23.    "Remote Computing Service" is a service that provides to the public computer storage or processing services by means of an "electronic communications system." 18 U.S.C. § 2711.

24.    "Electronic Communications System" means any wire, radio, electromagnetic, photo optical, or photo electronic facilities for the transmission of wire or electronic communications, and any computer facilities or related electronic equipment for the electronic storage of such communications.  18 U.S.C. § 2510(14).

25.    "Contents," when used with respect to any wire, oral, or electronic communication, includes any information concerning the substance, purport, or meaning of that communication.  18 U.S.C. § 2510(8).

26.    "Electronic storage" means (a) any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and (b) any storage of such communication by an electronic communication service for purposes of backup protection of such communication. 18 U.S.C. § 2510(17).

## V. TECHNICAL BACKGROUND/FACEBOOK

27.    Facebook, Inc. owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com.  Facebook, Inc. allows its users to establish accounts with Facebook, Inc., and users can then use their accounts to share written

news, photographs, videos, and other information with other Facebook, Inc. users, and sometimes with the general public.

28.    Facebook, Inc. asks users to provide basic contact information to Facebook, Inc., either during the registration process or thereafter.  This information may include the user's full name, birth date, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.  Facebook, Inc. also assigns a user identification number to each account.

29.    Facebook, Inc. users can select different levels of privacy for the communications and information associated with their Facebook, Inc. accounts.  By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, to all Facebook users, or to anyone with access to the Internet, including people who are not Facebook users.  Facebook, Inc. accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook, Inc.

30.    Facebook, Inc. users may join one or more groups or networks to connect and interact with other users who are members of the same group or network.  A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request."  If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other.  Each Facebook user's account includes a list of that user's "Friends" and a "Mini-Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

31.    Facebook, Inc. users can create profiles that include photographs, lists of personal interests, and other information.  Facebook, Inc. users can also post "status" updates about their

whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet.  Facebook, Inc. users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list.  A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

32.    Facebook, Inc. has a Photos application, where users can upload an unlimited number of albums and photos.  Another feature of the Photos application is the ability to "tag" (i.e., label) other users in a photo or video.  When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video.  For Facebook's purposes, a user's "Photoprint" includes all photos uploaded by that user that have not been deleted, as well as all photos uploaded by any user that have that user tagged in them.

33.    Facebook, Inc. users can exchange private messages on Facebook with other users.  These messages, which are similar to e-mail messages, are sent to the recipient's "Inbox" on Facebook, which also stores copies of messages sent by the recipient, as well as other information.  Facebook, Inc. users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile.

34.    Facebook Notes is a blogging feature available to Facebook, Inc. users, and it enables users to write and post notes or personal web logs ("blogs"), or to import their blogs from other services, such as Xanga, LiveJournal, and Blogger.

35.    The Facebook Gifts feature allows users to send virtual "gifts" to their friends that appear as icons on the recipient's profile page.  Gifts cost money to purchase, and a personalized message can be attached to each gift.  Facebook users can also send each other "pokes," which

are free and simply result in a notification to the recipient that he or she has been "poked" by the sender.

36.   Facebook, Inc. also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

37.   In addition to the applications described above, Facebook, Inc. also provides its users with access to thousands of other applications on the Facebook platform. When a Facebook, Inc. user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

38.   Some Facebook, Inc. pages are affiliated with groups of users, rather than one individual user. Membership in the group is monitored and regulated by the administrator or head of the group, who can invite new members and reject or accept requests by users to enter. Facebook, Inc. can identify all users who are currently registered to a particular group and can identify the administrator and/or creator of the group. Facebook, Inc. also assigns a group identification number to each group. Facebook, Inc. uses the term "Group Contact Info" to describe the contact information for the group's creator and/or administrator, as well as a PDF of the current status of the group profile page.

39.   Facebook, Inc. uses the term "Neoprint" to describe an expanded view of a given user profile. The "Neoprint" for a given user can include the following information from the user's profile: profile contact information; Mini-Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook, Inc. user identification numbers; groups and networks of which the user is a member, including the groups' Facebook, Inc. group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook, Inc. applications.

11

40.     Facebook, Inc. also retains Internet Protocol ("IP") logs for a given user ID or IP address. These logs may contain information about the actions taken by the user ID or IP address on Facebook, Inc., including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action. For example, if a user views a Facebook, Inc. profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

41.     Social networking providers like Facebook, Inc. typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook, Inc. users may communicate directly with Facebook, Inc. about issues relating to their account, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Facebook, Inc. typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications.

42.     Therefore, the computers of Facebook, Inc. are likely to contain all the material just described, including stored electronic communications and information concerning subscribers and their use of Facebook, Inc., such as account access information, transaction information, and account application.

## VI. PROBABLE CAUSE

43.     On or about February 12, 2017, Hunter's Heaven Gun Store, a Federal Firearms Licensee (FFL), was burglarized. Hunter's Heaven Gun Store is located at 3530 George Washington Memorial Highway, Hayes, Virginia. Hayes, Virginia is located in Gloucester County. An employee from Hunter's Heaven completed an inventory of the stolen firearms, and

reported to law enforcement that over 50 firearms were stolen from the business. ATF and Gloucester County Sherriff's Office began a joint investigation with Newport News Police Department.

44.     On February 17, 2017, law enforcement received information that ANGEL LEWIS BRUNO was selling firearms at the American Tudor Inn, located at 15540 Warwick Boulevard, Newport News, Virginia. Law enforcement also received information that narcotics were in BRUNO's hotel room.

45.     Newport News Police began conducting surveillance of multiple rooms at American Tudor Inn, including room number 222.  On February 21, 2017, with the permission of hotel management, Newport News Police utilized a Police K-9 to conduct a free air sniff outside of room number 222 of American Tudor Inn.  The K-9 positively alerted, indicating the presence of narcotics.

46.     A Newport News Police Detective left the motel to obtain a state search warrant for room number 222. While Newport News Police were obtaining the search warrant, XAVIER JUSTICE LEE GREENAUER-MATTOX and PHILIP THOMAS EVANS left room 222 and drove away in BRUNO's 2005 Toyota Prius. Newport News Police attempted to execute a traffic stop in Newport News, and the Prius fled at high rates of speed, exceeding 100 miles per hour. GREENAUER-MATTOX and EVANS were later apprehended by Virginia State Police (VSP) and Newport News Police in Norfolk, Virginia, after law enforcement deployed tire spike strips in Norfolk, Virginia.

47.     As Newport News Police were obtaining a state search warrant for motel room 222, BRUNO exited room number 222 with three (3) rifles covered with a sheet. Police instructed BRUNO to stop, and he dropped the rifles in the motel parking lot and fled from police. He was taken into custody after a short foot chase. Police recovered the three rifles from

the parking lot and found that they were stolen from Hunter's Heaven Gun Store on February 12, 2017.

48.    Newport News Police executed a search warrant on room number 222. At the time the officers executed the search warrant, ALISSHA SHALEE FAULKS was present inside room number 222. Officers recovered six (6) handguns, all of which had been reported stolen from Hunter's Heaven Gun Store on February 12, 2017. Police also recovered suspected cocaine, suspected marijuana, digital scales, a mask, and drug paraphernalia. Multiple suspected narcotics, drug paraphernalia, and loose live and spent ammunition were scattered throughout the motel room in plain view. A Glock 42, .380 caliber magazine with ammunition was recovered in FAULKS's purse. FAULKS's purse also contained a personal identifying document of FAULKS. A black LG cellular phone was also recovered from FAULKS's person. In total, nine stolen firearms were recovered by law enforcement from American Tudor Inn on February 21, 2017. A price inventory/price tag from Hunter's Heaven Gun Store was recovered from room number 222.

49.    On February 21, 2017, Your Affiant took custody of the firearms, magazines to the firearms, and the LG cell phone belonging to FAULKS.

50.    On February 27, 2017, an additional stolen firearm was recovered in room number 214 of the American Tudor Inn located at 15540 Warwick Blvd, Newport News, Virginia. The firearm, a Magnum Research BFR 500 revolver with serial number BRO5257, was reported stolen from Hunter's Heaven Gun Store on February 12, 2017. The firearm was found between the mattress and box spring by the new tenant, who reported finding the firearm to police. An inventory/price tag from Hunter's Heaven was still attached to the firearm.

51.    An employee of American Tudor Inn provided the registration information for room 214, and identified FAULKS as the person who rented room 214 on February 11, 2017.

14

Room 214 was rented in another individual's name, using a telephone number 757-303-1579, and an address associated with FAULKS. The phone number 757-303-1579 is associated with the Facebook account of "Shae Bae" and photographs on the account are of FAULKS. The employee further stated that FAULKS was with several males and believed to have shared a room with GREENAUER-MATTOX. Investigators have determined that GREENAUER-MATTOX is FAULKS's boyfriend.

52.     On April 7, 2017, law enforcement executed a search warrant on a LG phone belonging to FAULKS. In the Facebook Messenger application, there appears to be communications with FAULKS and other individuals directing them to the Tudor Inn for narcotic transactions. On February 13, 2017, there is communication between EVANS and FAULKS on Facebook messenger where they are discussing the location of the other suspects (BRUNO and GREENAUER-MATTOX). A download of the phone showed only one text message sent or received on FAULKS' phone. In recorded jail calls, FAULKS mentioned not using text messaging to communicate with people. In jail calls, GREENAUER-MATTOX directs FAULKS to sign into his Facebook account and asked who has messaged him. GREENAUER-MATTOX directs FAULKS to delete messages and associates "who he had done business with" and ultimately, GREENAUER-MATTOX's account was deactivated for a time while he is in Newport News custody. A video posted by BRUNO on February 20, 2017, has some unknown male in the background discuss just robbing someone at the corner store. BRUNO and unknown associates are suspected of 3 separate drive-by shootings in Newport News from a Silver or Grey Toyota Prius. Video surveillance from one of the shootings shows a silver Toyota Prius with body damage and a missing front license plate similar to BRUNO's vehicle enter one of the apartment complexes when shots were fired.

15

53.     FAULKS has identified her Facebook account, which is located at https://www.facebook.com/Sha.Gutta. BRUNO's Facebook account was identified by investigators as "Angel TheFlow Bruno" by photographs of BRUNO on the account, including the Facebook profile picture depicting BRUNO. BRUNO confirmed with investigators that this was his Facebook account.   GREENAUER-MATTOX's Facebook account was identified by investigators as the Facebook account "Xavier Muhammad Mattox," based upon photographs of GREENAUER-MATTOX, including the profile picture, which depicts GREENAUER-MATTOX and FAULKS.   GREENAUER-MATTOX's account is located at https://www.facebook.com/profile.php?id=100004552565128. EVANS's Facebook account, "Phillip Evans," was identified by investigators based upon photographs on the account of EVANS, including the profile picture depicting EVANS.  EVANS's Facebook account is located at https://www.facebook.com/profile.php?id=100010331737399

54.     On July 19, 2017, BRUNO, EVANS and GREENAUER-MATTOX were indicted on Possession of a Stolen Firearm, in violation of 18 U.S.C. § 922(j), Possession of a Firearm during a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c), and Possession with Intent to Distribute Cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). On July 27, 2017, ATF and the Newport News Police department arrested GREENAUER-MATTOX in Newport News, Virginia. On July 27, 2017 and July 28, 2017, GREENAUER-MATTOX was interviewed by ATF after being advised of his *Miranda Rights*. GREENAUER-MATTOX admitted to directing FAULKS to delete Facebook associates of his cocaine suppliers and that he had many contacts on Facebook from whom he received cocaine. GREENAUER-MATTOX admitted to disposing of his former cell phone during the police pursuit on February 21, 2017. On July 28, 2017, FAULKS was interviewed by ATF agents.  FAULKS stated that EVANS, BRUNO and GREENAUER-MATTOX communicated through Facebook Messenger. FAULKS stated the

16

contents of those messages included discussions about narcotics and firearms. FAULKS consented to a search of her Facebook Account, however did not remember the password. FAULKS's consent to the search of her Facebook Account remains in effect and law enforcement has attempted to access her account and has attempted to reset her account password, but has been unable to do so.

55.     On September 5, 2017, BRUNO was interviewed by ATF agents in the presence of his attorney. BRUNO stated that he and his co-defendants, GREENAUER-MATTOX and EVANS, broke into Hunter's Heaven Gun Store and stole over 50 firearms. BRUNO consented to a search of his Facebook account and provided his username and password to ATF agents. A preview of his account shows messages between GREENAUER-MATTOX and BRUNO discussing acquiring firearms in January 2017. On February 12, 2017 at approximately 4:00 a.m., GREENAUER-MATTOX messaged BRUNO through the Facebook Messenger Application, "I got something we can do tonight." According to BRUNO, GREENAUER-MATTOX and EVANS approached BRUNO with a plan to commit the gun store burglary. BRUNO stated that EVANS, GREENAUER-MATTOX, and FAULKS all used Facebook Messenger to communicate about drugs and guns through direct messaging and Facetime.

## VI. INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

56.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require  Facebook, Inc. to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B,

17

LRL
DSB

government-authorized persons will review the production and seize those items described in Section II of Attachment B.

## VII. CONCLUSION

57.     Based on the foregoing, there is probable cause to believe that the users of the Facebook accounts described in Attachment A, ALISSHA SHALEE FAULKS, XAVIER JUSTICE LEE GREENAUER- MATTOX, and PHILLIP THOMAS EVANS, respectively, have violated Conspiracy to Commit an Act Against the United States, in violation of 18 U.S.C. § 371; Possession of a Stolen Firearm, in violation of 18 U.S.C. 922(j); Theft from a Federal Firearms Licensee, in violation of 18 U.S.C. 922(u); Possession of a Firearm In Furtherance of Drug Trafficking, in violation of 18 U.S.C. 924(c), and Possession with Intent to Distribute a Controlled Substance, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(c), and that probable cause exists to believe that evidence, fruits, and instrumentalities of such violations will be found within the information associated with these Facebook, Inc. accounts.

58.     Accordingly, I request that warrants be issued authorizing ATF Special Agents, with assistance from other law enforcement personnel, to search those premises noted in Attachment A and obtain the information in the accounts for the items noted in Attachment B.

59.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

60.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. Facebook, Inc. accepts out-of-state and out-of-district service of subpoenas, court orders, and search warrants via the Law Enforcement

Online Requests portal without the presence of a law enforcement officer. Accordingly, your affiant will execute the requested search warrant by e-mail to the custodian of records at Facebook, Inc. and permission is requested for the data to be copied / obtained outside of the presence of a law enforcement officer. It is anticipated that Facebook, Inc. will produce the requested records in electronic format accompanied by a signed authentication letter via E-mail or on electronic media via U.S. Mail to your affiant.

FURTHER YOUR AFFIANT SAYETH NOT.

Special Agent Daniel S. Beasley
Bureau of Alcohol, Tobacco and Firearms

This affidavit has been reviewed for legal sufficiency by Assistant United States Attorney Megan M. Cowles.

Megan M. Cowles
Assistant United States Attorney

Sworn and subscribed to before me this 20th day of October, 2017, in the City of Norfolk, Virginia.

UNITED STATES MAGISTRATE JUDGE

19

## ATTACHMENT A

### Property to BE SEARCHED

This search warrant applies to information associated with the Facebook User Identifiers:

    a.    "Xavier Greenauer-Mattox AKA X or Justice" with unique web address
           https://www.facebook.com/profile.php?id=100004552565128

    b.    "Alissha Faulks AKA Sha," with unique web address
           https://www.facebook.com/Sha.Gutta

    c.    "Phillip Evans AKA Phil" with unique web address
           https://www.facebook.com/profile.php?id=100010331737399

that is stored at premises owned, maintained, controlled, or operated by Facebook, a company headquartered at 1601 Willow Road, Menlo Park, California.

## ATTACHMENT B

## PARTICULAR ITEMS TO BE SEIZED

### I.   Information to be disclosed by Facebook, Inc.

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook, Inc., Facebook, Inc. is required to disclose the following information to the government for each Facebook User Identifiers listed in Attachment A:

(a)   All contact and personal identifying information provided to Facebook, to include the user's full name, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, account numbers associated with the subscriber(s),  methods of payment, and detailed billing records.

(b)   All Photoprints, including all photos uploaded by that user ID and all photos uploaded by any user that have that user tagged in them;

(c)   All Neoprints, including profile contact information; Mini-Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook, Inc. user identification numbers; groups and networks of which the user is a member, including the groups' Facebook, Inc. group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook, Inc. applications;

(d)   All private messages, including sent, received, deleted, archived, or draft messages, and all attachments that accompany the respective messages.

(e)   Posted comments on Facebook profiles and/or photographs of other users or on own profile(s)/photographs.

(f)     Information pertaining to "groups" affiliated with the user accounts, the creator of the group(s), the administrator or head of the group(s), and all users who are currently registered to the group(s).

(g)     The contents of the "trash" folder and the contents of any other folder within the private message/e-mail accounts whether created by the private message/e-mail account automatically, or created by the user.

(h)     All files of all activity to the listed account, including dates, times, connections, ports, dial-ups, and locations, including log files providing information on the originating Internet Protocol (IP) addresses (static, dynamic, or other), for the subscriber accounts specified above, and log files of all activity for the accounts associated with the subscriber accounts specified above, including dates, time, connections, port, dial-up, and locations.

(i)     All history of customer terms of service and staff complaints against screen names and user profiles associated with the listed account(s).

(j)     All records of subscriber account preferences, including user account "Groups", user's "Friends" ,"News Feeds", "Status" updates (including their whereabouts and actions); as well as links to videos, photographs, articles, and other items available elsewhere on the Internet.

(k)     Blogs, Chat logs, photographs, and instant messages, both sent and received. And chat communications stored in the chat history for the identified account(s).

(l)     Internet history records relating to the listed account(s).

(m)     All search function use by the account(s)/users, including keyword, username, and/or page, searches.

LRL
DSN